OPINION OF THE COURT
Emily Pines, J.
Ordered that the defendant’s motion (motion sequence No. 003) for an order directing the return of documents and a protective order is denied.
In this action for breach of fiduciary duty, fraud, restitution and disgorgement of attorneys’ fees, the defendant, Ruskin Moscou Faltischek, PC. (RMF), moves (motion sequence No. 003) for (1) an order directing plaintiff South Shore Neurologic Associates, EC. (SSNA) to return to RMF allegedly privileged *748 documents produced by RMF pursuant to a stipulated protective order, and (2) a protective order prohibiting SSNA from using said documents.
Factual and Procedural Background
This action, commenced in July 2010, is one of multiple related actions concerning purportedly illegal fee-splitting arrangements between SSNA and certain entities. In this action, SSNA claims that RMF breached its fiduciary duty to SSNA and committed fraud during the course of RMF’s representation of SSNA from 1989 through 2009. As set forth in this court’s order dated May 9, 2011, denying RMF’s motion to dismiss the complaint:
“According to the Complaint, Ruskin Moscou represented SSNA in two contract negotiations, one on September 1, 1994 and the other in 2007, advising SSNA that the 1994 Agreement, its amendments over the years, and a 2007 billing and collection agreement were lawful, while at the same time representing other entities to these agreements, namely Brookhaven Magnetic Imaging, Inc. (BMRI), Lee Management, Inc. (Lee), and Mobile Health Management. These entities are interrelated in that BMRI is owned by SSNA (2/3) and nonphysician Bert Brodsky (1/3), Lee Management, Inc. is owned by Bert Brodsky and was owned by Brodsky and nonphysician Gerald Shapiro at certain relevant times in the past, and Mobile Health is owned by non-physician Brodsky’s wife and was previously owned at certain relevant time periods by her and Gerald Shapiro.
“In addition to what [plaintiff] claims to be an obvious conflict of interest, SSNA asserts that Ruskin Moscou advised SSNA that such agreements were proper and lawful after participating in a 1994 deposition of Gerald Shapiro concerning the rights of a departing physician, in which Shapiro admitted that SSNA was improperly receiving one-third of the medical income generated by South Shore’s MRI operations via their billing company, Lee Management. Despite such knowledge, according to SSNA, the law firm allowed SSNA to enter into several of these illegal arrangements and participated in covering up their unlawful nature through their termination in 2009.”
*749 It is undisputed that all of the parties to the related actions requested that RMF produce all of its files related to its representation of any of the parties. In response to this request, RMF advised the parties that in order to produce the files it required, among other things, a written waiver of the attorney-client privilege by each respective client. By letter dated August 4, 2009, counsel for the various parties advised RMF that the attorney-client privilege would not be waived but that each party authorized RMF to allow inspection of each party’s files (including materials that may be subject to a claim of privilege) by attorneys for the adverse parties pursuant to a stipulated protective order, which, according to counsel, included “a claw-back provision for any documents that are exchanged in discovery and are determined to be privileged from production.” Paragraph 15 of the stipulated protective order provides, in relevant part:
“The inadvertent production of any Discovery Materials subject to work-product immunity, the attorney-client privilege or other legal privilege protecting information from discovery shall not constitute a waiver of the immunity or privilege, provided that the Designating Party shall notify all Receiving Parties in writing within 60 days of production of the Discovery Materials to the Designating Party, or thereafter with a showing of good cause.”
On August 6, 2009, counsel for all parties reviewed RMF’s files at RMF’s offices and marked the documents contained therein which they wanted copied. However, RMF informed counsel for the parties that RMF would not turn over its files for reproduction unless and until SSNA paid an outstanding invoice for prior legal services rendered to it by RMF. Because SSNA contested payment of the invoice, it served a subpoena duces tecum dated August 10, 2009, upon RMF for production of the documents marked for reproduction on August 6, 2009.
On or about January 12, 2010, after the fee dispute between RMF and SSNA was resolved, RMF delivered all of the boxes of original files that were produced, inspected, and marked on August 6, 2009, to counsel for SSNA. Thereafter, SSNA’s counsel arranged to have all of the RMF documents that were marked on August 6, 2009 copied and distributed to opposing counsel. On January 27, 2010, multiple boxes containing copies of more than 10,000 documents from RMF’s files marked on *750 August 6, 2009 were provided to opposing counsel. Included in the production were attorney-client communications, drafts, internal attorney work product and other materials that RMF now claims are exempt from disclosure.
By letter dated July 2, 2010, counsel for SSNA sent RMF a copy of a draft complaint against RMF, which included as exhibits internal memoranda, e-mails and other documents from RMF’s files. In the letter, SSNA advised RMF that it would hold off in filing the complaint for a brief period so that RMF could consider whether it wanted to settle before the complaint was filed. On July 23, 2010, SSNA commenced this action by filing the complaint with the exhibits.
In support of its motion, RMF argues, among other things, that it provided the documents pursuant to the terms of the stipulated protective order, which provides that no privileges held by the parties would be waived by the production of the documents and that a claim of privilege could be raised at any time, provided there was a showing of good cause. RMF contends that good cause exists for its motion at this time because it had no means of identifying which documents from its files had been copied by SSNA, and produced to the other parties, until mid February 2011, when SSNA’s counsel provided RMF with a disk of the documents copied from RMF’s files. RMF contends that until that time SSNA had failed to provide RMF with a complete set of the copied documents, as it was required to do. However, RMF fails to cite to the source of SSNA’s purported obligation to provide it with a set of the copied documents. Additionally, RMF argues that SSNA was not its client during the negotiation of the 1994 and 2007 contracts and that even it was, it would not be entitled to the documents at issue because they were intended for internal law office review and use and consist of RMF’s internal firm memos and e-mails. According to RMF, many of the documents at issue are protected attorney-client communications and attorney work product generated by RMF during the course of its representation of BMRI, Lee Management, Mobile Health and Dr. Chernik, not SSNA. Finally, RMF contends that SSNA’s counsel has violated its ethical obligation to promptly notify the sender and refrain from further review or other use of information which the lawyer knows or believes was not intended for the lawyer and contains secrets, confidences or other privileged matter.
In opposition to RMF’s motion, SSNA argues, among other things, that by voluntarily producing it files in January 2010 *751 and failing to take any action to assert a claim of privilege until March 2011, RMF waived its right to claim privilege and that it cannot invoke privilege to cover up its own wrongful conduct. SSNA further argues that it is improper for RMF to now seek to invoke a claim of privilege when all of RFM’s clients jointly requested access to their files and agreed in a stipulated protective order for a process to raise a claim of privilege. Additionally, SSNA contends that neither the August 4, 2009 letter nor the stipulated protective order relieved RMF of its obligation to promptly assert a claim of privilege since (1) those documents only govern the rights of RMF’s clients with regard to assertion of a claim of privilege, (2) RMF was not a signatory to the stipulated protective order, and (3) the instant action was not even commenced until nearly a year after the stipulated protective order was signed. Further, SSNA argues that the documents at issue are critical evidence of RMF’s breach of its fiduciary duty and ethical duty to SSNA, as well as its involvement in the illegal fee-splitting scheme. Therefore, the documents are not subject to the internal firm document exception to production. SSNA states that RMF, as SSNA’s corporate counsel, violated the fiduciary duty it owed to SSNA.
In reply, RMF argues, among other things, that SSNA is not entitled to the privileged documents as RMF did not represent SSNA in the preparation of the 1994 or 2007 agreements, the propriety of which is at issue in the related actions. RMF further contends that SSNA has failed to show that any of the parties intended to waive the privilege because RMF’s clients (BMRI, Mobile Health, Lee Management, Brodsky and Chernik) at all times intended that the documents remain confidential, subject to the attorney-client and work-product privileges.
Discussion
Generally, disclosure of privileged documents results in waiver of the privilege unless the party asserting the privilege satisfies its burden of demonstrating that (1) it intended to maintain confidentiality and took reasonable steps to prevent its disclosure, (2) it promptly sought to remedy the situation after learning of the disclosure, and (3) the party in possession of the materials will not suffer undue prejudice if a protective order is granted (AFA Protective Sys., Inc. v City of New York, 13 AD3d 564, 565 [2d Dept 2004]).
Here, contrary to RMF’s contention, the court finds that the production of its files in January 2010 was not made pursu *752 ant to the stipulated protective order. First, it is undisputed that RMF was not a party to the stipulated protective order. Rather, the stipulated protective order was entered into between SSNA, BMRI, Lee Management, Mobile Health, Brodsky and Dr. Chernik, after RMF demanded a written waiver of the attorney-client privilege, by each of its respective clients, before it would allow inspection of its files.
“Unlike Congress, the New York State Legislature shows no signs of enacting legislation which would empower New York State judges to enter waiver-sparing orders that would be enforceable against nonparties. Thus, the dilemma exists and parties who produce privileged documents without taking reasonable precautions to prevent disclosure do so at their own risk” (Haig, Commercial Litigation in New York State Courts § 25:57 [3 West’s NY Prac Series 3d ed]).
As a nonparty to the stipulated protective order, RMF does not have any right to enforce its terms.
In any event, even if the provisions of the stipulated protective order applied to RMF, the plain language of paragraph 15 states that it relates only to “inadvertent production” of privileged information. Based upon RMF’s demand in July 2009 for a waiver of the attorney-client privilege prior to producing its files, it obviously knew that its files contained privileged materials. Yet, RMF produced its files without the waiver and without being a party to the stipulated protective order. Under such circumstances, it cannot be said that RMF inadvertently produced privileged material contained within its files.
Moreover, it is clear that RMF did not act promptly to assert a claim of privilege. As noted above, RMF knew in July 2009, that it was being asked to disclose potentially privileged material contained within its files. It allowed inspection of its files in August 2009 and then turned its original files over to counsel for SSNA in January 2010. Further, the copy of the draft complaint sent by counsel to SSNA to RMF in July 2010 included as exhibits internal memoranda, e-mails and other documents from RMF’s files. Despite the foregoing, RMF did not seek a return of the documents and a protective order until it made the instant motion on March 24, 2011. The repeated failure of RMF to raise the issue of privilege with respect to the documents for approximately 15 months after it turned over its original files is indicative of the failure of RMF to exercise rea *753 sonable care and due diligence, and constituted a waiver of the privilege (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 162 AD2d 577, 578 [2d Dept 1990]). RMF’s argument that it had no means of identifying which documents from its files were privileged until mid February 2011, is unpersuasive. Clearly, RMF had the opportunity to review its own files prior to turning them over to SSNA’s counsel.
Finally, although RMF claims that it did not have an attorney-client relationship with SSNA with regard to the 1994 and 2007 contracts, as previously determined by the court, there is documentary and circumstantial evidence to the contrary such that the court cannot determine whether there was concurrent representation and, if so, whether it was with the full consent of all parties upon complete disclosure (see Matter of Kelly, 23 NY2d 368, 376 [1968]).
In light of the foregoing, the remaining issues raised by the parties need not be addressed.